UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                           :
STRALIA MARITIME S.A. et al.,                 :
                                      Plaintiffs,  :
                                                          :        18 Civ. 4150 (LGS)
                 -against-                               :
                                                          :        **OPINION AND ORDER**
PRAXIS ENERGY AGENTS DMCC,      :
                                     Defendant.  :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Plaintiffs Stralia Maritime S.A. ("Stralia") and Aerio Shipmanagement Ltd. ("Aerio," and collectively with Stralia, "Plaintiffs") assert state common law claims against Defendant Praxis Energy Agents DMCC ("Praxis") arising out of or in connection with their contractual relationship. Defendant moved to dismiss under Federal Rules of Civil Procedure 12(b)(1), (2) and (6). The Court denied the motion without prejudice to renewal at a later time. On April 22, 2019, Defendant renewed its motion. On April 29, 2019, in light of the parties' imminent settlement negotiations, the Court issued a summary order granting the motion only in part, with an opinion to follow in the event that the parties' settlement discussions proved unfruitful. The opinion below explains that order.

**I.     BACKGROUND**

      The following alleged facts are drawn from the First Amended Complaint (the "Complaint") and accepted as true only for purposes of this motion. *See Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

      Plaintiff Stralia is the registered owner of the M/V GEMA (the "Vessel"). Plaintiff Aerio was the ship manager of the Vessel at all relevant times. Defendant Praxis is an entity that sells

fuel known as bunkers ("Bunkers"). All three parties are foreign entities that were organized and have their principal place of business outside the United States.

On April 7, 2017, Plaintiffs and Praxis entered into the Bunker Supply Contract (the "Bunker Contract") pursuant to which Praxis agreed to supply Bunkers to the Vessel at the Port of Fujairah on or about April 10-12, 2017. The Bunker Contract fully incorporated the Praxis Energy Agents General Terms and Conditions for the Sale of Marine Bunker Fuels and Lubricants, which provides that "any disputes and/or claims arising in connection with these Conditions and/or any agreement governed by them, shall be submitted to the United States District Court for the Southern District of New York." The Bunker Contract identifies the Bunkers supplier as "World Bunker Suppliers," which Plaintiffs understood to be World Bunkering Traders Limited ("WBT"). Unbeknownst to Plaintiffs, Praxis had sub-contracted with International Fuel Suppliers Limited ("IFS"), which in turn, had sub-contracted with WBT, to physically supply Bunkers to the Vessel. On April 11, 2017, WBT assigned to IFS all of its rights, title and interest in any claims arising out of its contract, including the right to arrest the Vessel for non-payment.

WBT supplied Bunkers to the Vessel at the Port of Fujairah on April 11, 2017. IFS issued its invoice to Praxis on the same day (the "IFS Invoice"), and Praxis issued an invoice to Plaintiffs for $86,799.76 (the "Praxis Invoice"). Around this time, a dispute developed between Praxis and IFS and/or WBT unrelated to the Bunker Contract. As a result of the dispute, Praxis informed Plaintiffs that it was withholding payment to IFS and/or WBT for the Bunkers supplied to the Vessel.

Because of the ongoing dispute between Praxis and its subcontractors, Plaintiffs withheld payment to Praxis out of concern that WBT would arrest the Vessel as a result

of Praxis' failure to remit payment down the supply chain.

In June 2017, Plaintiffs and Praxis entered into a letter agreement, the Letter of Indemnity (the "LOI"). Under the terms of the LOI, Praxis agreed to

> fully defend, at its sole cost, indemnify and hold harmless the Vessel, Stralia and Aerio from any and all demands, claims, liabilities, damages, suits, actions (including arrest or attachment of the Vessel), debts, obligations, judgments, costs and expenses of whatsoever kind and nature (inclusive of reasonable attorneys fees) by World Bunkering arising out of the Bunkers supplied to the Vessel on 11 April 2017.

In exchange for Praxis' promise to indemnify Plaintiffs in the event of the Vessel's arrest, Plaintiffs agreed to settle -- i.e., pay -- the outstanding Praxis Invoice. The LOI also contains a forum selection clause:

> Any disputes arising under this LOI shall be governed by the Law of the State of New York and Praxis further agrees that any disputes arising hereunder shall be brought exclusively before the United States District Court for the Southern District of New York, or alternatively if jurisdiction is lacking in such Court, then before the New York Supreme Court, New York County, the jurisdiction of which courts Praxis hereby consents to be bound.

At the time the LOI was signed, Praxis had misled Plaintiffs into believing that it had contracted directly with WBT to supply the Bunkers, and Plaintiffs were not aware of IFS's involvement in the supply chain.

After executing the LOI, Plaintiffs paid the Praxis Invoice in full. Praxis, however, failed to resolve its dispute with IFS and/or WBT. As a result, on November 8, 2017, IFS arrested the Vessel at Fujairah and commenced proceedings before the Fujairah Court to validate the arrest proceedings. IFS also sued Stralia and Praxis in Dubai, alleging that Praxis had breached the terms of the contract to supply the Bunkers pursuant to which Praxis owed $84,380.37 under the IFS Invoice and further alleging that Stralia was directly liable to IFS for payment of the sum as the owner of the Vessel.

3

Despite the LOI, Praxis failed to defend, indemnify and hold harmless Plaintiffs in the arrest proceedings, the action to validate the arrest, and an action by IFS against Stralia and Praxis for breach of contract, all in the UAE courts (the "UAE Legal Proceedings."). Stralia posted cash security of $84,931.50 with the court in Fujairah to release the Vessel from arrest.

On January 16, 2018, Praxis remitted payment to IFS for the amount due under the IFS Invoice, but Praxis failed to pay to IFS the court fees, legal interest and/or legal fees incurred by IFS in the UAE Legal Proceedings. Stralia paid IFS $18,720 on March 12, 2018, as full and final settlement of all claims against Stralia and the Vessel. In addition to the settlement amount, Stralia incurred costs defending the UAE Legal Proceedings and sustained lost profits as a result of the arrest of the Vessel. Plaintiffs claim total damages of $388,166.

## II.  STANDARD

Defendant's current motion is construed as a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(c), as it renews -- at the Court's direction – Defendant's prior motion, which included a challenge to subject matter jurisdiction, personal jurisdiction and the sufficiency of the pleading.

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint [] as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 712 (2d Cir. 2019). "The party asserting subject matter jurisdiction carries

the burden of establishing, by a preponderance of the evidence, that jurisdiction exists." *Landau v. Eisenberg*, 922 F.3d 495, 497 (2d Cir. 2019).

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff "must make a prima facie showing that jurisdiction exists. Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (alteration in original). "[T]he pleadings . . . [are to be construed] in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).

Rule 12(c) provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court applies the same standard to a motion for judgment on the pleadings as that used for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). In evaluating the sufficiency of a complaint, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *id.*, but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (citation omitted). A pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from conceivable to plausible."

5

*Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678; *accord Panjiva, Inc. v. United States Customs & Border Prot.*, No. 17 Civ. 8269, 2018 WL 4572251, at *2 (S.D.N.Y. Sept. 24, 2018). In assessing the sufficiency of a pleading, a court may consider documents attached to it or incorporated in it by reference. *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247–48 (2d Cir. 2017).

New York law applies because the LOI contains a New York choice-of-law clause, and both parties assume on this motion that New York law applies. *See Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017).

### III. DISCUSSION

#### A. Jurisdiction

##### 1. Subject Matter Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333. The U.S. Constitution extends the federal judicial power to "all cases of admiralty and maritime jurisdiction." Art. III, § 2, cl. 1. By statute, courts are empowered to hear "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1); *d'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 886 F.3d 216, 223 (2d Cir. 2018). "This inquiry is conceptual and not constrained by the location of contract performance or a vessel's involvement in the dispute." *Id.*

Defendant does not dispute that the Bunker Contract, either alone or as modified by the LOI, is a maritime contract falling within the scope of 28 U.S.C. § 1333. Defendant's motion is predicated on the argument that the LOI is not enforceable. The LOI requires Plaintiffs to pay their outstanding invoice to Praxis in exchange for Praxis' agreement to "fully defend, at its sole cost, indemnify and hold harmless the Vessel, Stralia and Aerio from any and all demands,

6

claims, liabilities, damages, suits, action (including arrest or attachment of the Vessel), debts, obligations, judgments, costs, and expenses of whatsoever kind and nature. . . ." Defendant contends that Plaintiffs' promise to pay money due under the Bunker Contract is a pre-existing legal duty that cannot constitute consideration for the LOI.

This argument fails because the LOI is a valid modification of the Bunker Contract. While consideration is required for a contract to be valid, a modification to a contract need not be supported by additional consideration if the modification is "in writing and signed by the party against whom it is sought to enforce the change [or] modification . . . ." N.Y. Gen. Obl. Law § 5–1103; *In re Fishman*, 24 N.Y.S.3d 114 (2d Dep't 2015) (holding that a writing satisfying the requirements of § 5–1103 needed no additional consideration to be enforced). Because the LOI is in writing and was signed by a representative of Praxis, the lack of additional consideration from Plaintiffs does not render the LOI unenforceable.

Defendant cites *Hinterberger v. Catholic Health Sys., Inc.*, 536 F. App'x 14, 17 (2d Cir. 2013) (summary order), and *Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 178 (2d Cir. 2006), to support its argument that the LOI constitutes a promise to perform a pre-existing legal obligation and is not an enforceable modification of the Bunker Contract. Reliance on these cases is misguided because they did not involve the written modification of an existing contract; instead, they involved implied-in-fact contracts without any alleged modification to the parties' obligations. Here, the Bunker Contract is an explicit contract, and the LOI -- in writing and signed by Praxis -- modified the original agreement by requiring Praxis to indemnify Plaintiffs against claims by WBT arising out of the Bunkers supplied to the Vessel.

As the LOI is an enforceable modification of the Bunker Contract, and the Bunker Contract is a maritime contract, the Court has subject matter jurisdiction. *See, e.g., Hovensa*

7

*LLC v. Kristensons-Petroleum, Inc.*, No. 12 Civ. 5706, 2013 WL 1803694, at *3 (S.D.N.Y. Apr. 26, 2013) ("A bunker supply contract is squarely within the scope of admiralty jurisdiction." (citing *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603, 612-13 (1991)).

### 2. Personal jurisdiction

This Court has personal jurisdiction over Praxis because both the LOI and Bunker Contract include enforceable forum selection clauses. "Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006); *accord Dan-Bunkering (Am.), Inc. v. Tecnologias Relacionadas Con Energia y Servicios Especializados, S.A. de C.V.*, 17 Civ. 9873, 2019 WL 1877344, at *5 (S.D.N.Y. Apr. 26, 2019). "[F]orum selection clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 720–21 (2d Cir. 2013); *accord Lahoud v. Document Techs. LLC*, 17 Civ. 1211, 2017 WL 5466704, at *3 (S.D.N.Y. Nov. 14, 2017).

Here, the parties consented to jurisdiction in the Southern District of New York when they executed the Bunker Contract, and again when they executed the LOI. The Bunker Contract contains a forum-selection clause which states, "any disputes and/or claims arising in connection with these Conditions and/or any agreement governed by them, shall be submitted to the United States District Court for the Southern District of New York." Similarly, the LOI explicitly states that "any disputes arising hereunder shall be brought exclusively before the United States District Court for the Southern District of New York."

That the forum selection clause in the Bunker Contract does not contain a mandatory forum selection clause is irrelevant. The Bunker Contract's "permissive forum clause" confers

8

jurisdiction in the Southern District of New York. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007) ("A so-called permissive forum clause [] confers jurisdiction in the designated forum."). Moreover, as discussed above, the LOI is a valid modification of the Bunker Contract, and the LOI's mandatory forum selection clause confers exclusive jurisdiction on this Court. *See Phillips*, 494 F.3d at 386 ("A forum selection clause is. . . mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language.").

### 3. Stating a Claim

The Complaint pleads nine causes of action in numbered counts as follows: (1) breach of contract; (2) breach of implied warranty of good faith and fair dealing; (3) breach of the obligation to defend, indemnify and hold harmless; (4) common law indemnity; (5) unjust enrichment; (6) breach of the implied duty of good faith; (7) negligent misrepresentation; (8) fraud in the inducement and (9) reformation of the LOI based on unilateral mistake. Defendant's motion for judgment on the pleadings is granted as to Counts 2, 3, 4, 5 and 6 and denied as to Counts 1, 7, 8 and 9.

#### a. Breach of Contract (Count 1)

Defendant's motion is denied as to the breach of contract claim. Under New York law, the elements for breach of contract are "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (applying New York law).

The Complaint alleges that "Praxis' . . . failure to defend and indemnify Plaintiffs and the Vessel, breached the terms of the Contract, as supplemented and amended by the LOI." The Complaint states a sufficient claim of breach of contract for failure to indemnify in violation of

the LOI.  First, the express terms of the LOI require Praxis to "defend, at its sole cost, indemnify and hold harmless the Vessel, Stralia and Aerio from any and all demands, claims, liabilities, damages, suits, actions (including the arrest or attachment of the Vessel), debts, obligations, judgments, costs and expenses of whatsoever kind and nature (inclusive of reasonable attorneys' fees) by World Bunkering arising out of the Bunkers supplied to the Vessel on 11 April 2017." Second, after executing the LOI, Plaintiffs fulfilled their obligations under the LOI and made full payment of the Praxis Invoice on June 30, 2017.  Third, Praxis breached the terms of the LOI.  Praxis failed to remit payment to its sub-contractors, and as a result, on November 8, 2017, IFS arrested the Vessel at Fujairah.  When IFS commenced proceedings against Stralia and Praxis in the UAE seeking payment for the Bunkers under the IFS Invoice, Praxis failed to "defend, indemnify, and hold harmless" Plaintiffs and the Vessel in the UAE proceedings in violation of the LOI.  Lastly, the Complaint pleads damages of $388,166 as a result of Praxis's breach of contract.  The fact that IFS -- not WBT-- effectuated the arrest and initiated the UAE legal proceedings does not render the indemnification obligation unenforceable.  As discussed below, Defendant's alleged fraud in not disclosing its dispute with IFS provides grounds for reformation of the contract to include indemnification for demands by IFS, not just WBT.

The Complaint's second theory of breach of contract does not state a viable claim.  Count 1 asserts that Defendant breached an "implied term of the Contract. . . that Praxis would timely pay is sub-contractor(s), IFS and/or WBT, in order to avoid a threat that the Vessel would be arrested."  But neither the Bunker Contract nor the LOI contains any requirement, express or implied, that Praxis pay its downstream subcontractors.  *See Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407–08 (2d Cir. 2007) ("[A]n implied promise [must be] so interwoven into the

10

contract as to be necessary for effectuation of the purposes of the contract."); *accord Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 93 (2d Cir. 2013).

4. **Negligent Misrepresentation (Count 7)**

Defendant's motion is denied as to the negligent misrepresentation claim. Under New York law, the elements of negligent misrepresentation are: "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011).

The Complaint alleges a claim for negligent misrepresentation. The LOI by its terms requires Defendant to indemnify Plaintiff for demands only by WBT -- and not IFS whose relationship to the transaction was unknown to Plaintiffs. The Complaint alleges that Defendant negligently or intentionally failed to disclose IFS as a subcontractor, reinforcing Plaintiffs' expectation that WBT was the direct subcontractor.[1] Plaintiffs relied on Defendant's omission in entering into the LOI, and Plaintiff suffered harm as a result of this reliance.

Defendant contests only whether it had a duty to inform as a result of a special relationship with Plaintiffs. *See Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). Factors bearing on whether the defendant has a "special relationship" include "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it

---

[1] The negligent misrepresentation count also asserts that Defendant failed to disclose that it was in a dispute with WBT and IFS and did not intend to timely pay them. However this is directly contradicted by the Complaint's earlier allegations that "Praxis advised Plaintiffs that it was withholding payment to IFS and/or WBT for the Bunkers supplied to the Vessel," and consequently Plaintiff withheld payment from Praxis, and ultimately entered into the LOI.

for that purpose." *Marc J. Bern & Partners LLP v. U.S. Legal Support, Inc.*, No. 17 Civ. 6771, 2018 WL 2943784, at *6 (S.D.N.Y. June 11, 2018) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257 (1996)).

Plaintiffs argue that Praxis had a "special relationship" as a result of "specialized knowledge" because only Praxis had full knowledge of its downstream suppliers. A defendant's "superior knowledge of the particulars of its own business practices is insufficient to" establish a special relationship, and "[g]enerally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties." *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 928 N.Y.S.2d 229, 235–36 (1st Dep't 2011); *see Lantau Holdings Ltd. v. Orient Equal Intl. Group Ltd.*, 79 N.Y.S.3d 8 (1st Dep't 2018). Yet, "[c]ourts have found a special relationship and duty, for example, where defendants sought to induce plaintiffs into a business transaction by making certain statements or providing specific information with the intent that plaintiffs rely on those statements or information." *Century Pac., Inc. v. Hilton Hotels Corp.*, No. 03 Civ. 8258, 2004 WL 868211, at *8 (S.D.N.Y. Apr. 21, 2004) (applying New York law); *accord Mandarin Trading Ltd.*, 16 N.Y.3d at 180 (finding no "special relationship" where complaint failed to allege whether defendant had any contact with plaintiff).

Here, the Complaint alleges that Praxis mislead Plaintiffs into believing that it had contracted directly with WBT, and omitted "the identities of the intermediary sub-contractual supplier and the actual physical supplier, and Praxis' intention not to timely pay WBT and/or IFS" with the intent of inducing Plaintiffs to enter the Bunker Contract and LOI. The LOI itself demonstrates that Defendant was aware that Plaintiffs sought to insulate themselves from Defendant's unrelated disputes with its subcontractors and desired information about Defendant's subcontractors. Accordingly, the Complaint pleads a "special relationship" in

12

support of its claim for negligent misrepresentation. *See Century Pac., Inc.*, 2004 WL 868211, at *8 (applying New York law) ("[A] determination of whether a special relationship exists is highly fact-specific and generally not susceptible to resolution at the pleadings stage.").

5. **Fraudulent Inducement (Count 8)**

The Complaint sufficiently alleges a claim for fraudulent inducement only with respect to Defendant's misleading Plaintiffs into believing that Defendant had contracted directly with WBT and failing to disclose IFS while executing the LOI.

Defendant challenges this claim on the ground that it is duplicative of the breach of contract claim. "[A] fraud claim that arises from the same facts as an accompanying contract claim, seeks identical damages and does not allege a breach of any duty collateral to or independent of the parties' agreements is subject to dismissal as redundant of the contract claim." *Cronos Grp. Ltd. v. XComIP, LLC*, 64 N.Y.S.3d 180, 186 (1st Dep't 2017) (citations omitted). A fraudulent inducement claim is distinct from a breach of contract claim when it is "based on misrepresentations of then present facts that were collateral to the contract, and involved a breach of duty distinct from, or in addition to, the breach of contract." *Shugrue v. Stahl*, 985 N.Y.S.2d 547 (1st Dep't 2014).

The fraudulent inducement claim based on the theory that Defendant misled Plaintiff about the identity of its direct subcontractor is not duplicative of the breach of contract claim for Defendant's failure to indemnify. *See Shugrue*, 985 N.Y.S.2d at 548. The fraudulent inducement claim is based on misrepresentations and omissions that were collateral to the LOI; they were made before the parties agreed to the LOI, and they induced Stralia to enter into the

LOI. The breach of contract claim, in contrast, alleges a breach of the LOI and arises from Defendant's failure to indemnify. The two claims are thus factually and legally distinct.

The fraudulent inducement claim based on the misrepresentation "regarding [Defendant's] intention [not] to remit payment downstream. . . to [IFS and WBT]" is duplicative of the breach of contract claim and is therefore dismissed. *See Non-Linear Trading Co. v. Braddis Assocs.*, Inc., 675 N.Y.S.2d 5 (1st Dep't 1998) ("A cause of action for breach of contract cannot be converted into one for fraud by merely alleging that defendant did not intend to fulfill the contract.").

6. **Reformation (Count 9)**

The Complaint states a claim for reformation. Under New York law, reformation may be granted where there is fraudulent concealment by the knowing party. *See Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 498 (1986) (The court may order the reformation of a written agreement where, "[i]n a case of fraud, the parties have reached agreement and, unknown to one party but known to the other (who has misled the first), the subsequent writing does not properly express that agreement."); *see also AMEX Assurance Co. v. Caripides*, 316 F.3d 154, 161 (2d Cir. 2003) (applying New York law) ("reformation is available in cases of fraud. . . ."); *accord New York Univ. v. Factory Mut. Ins. Co.*, No. 15 Civ. 8505, 2018 WL 1737745, at *18 (S.D.N.Y. Mar. 27, 2018).

As the Complaint adequately pleads a claim for fraudulent inducement, the Complaint pleads that the LOI should be reformed to include IFS such that Praxis must indemnify Plaintiffs against "any and all demands . . . by WBT *and/or IFS* arising out of the Bunkers supplied to the

Vessel on 11 April 2017" (emphasis added). Defendant's only argument against reformation is that the LOI is unenforceable. As discussed above, this argument is rejected.

### 7. Breach of Implied Warranty of Good Faith and Fair Dealing (Count 2) and Implied Duty of Good Faith and Fair Dealing (Count 6)

The claims for breach of the implied covenant of good faith and fair dealing and breach of the implied warranty of good faith and fair dealing are dismissed. New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life and Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002); *accord Presbyterian Healthcare Servs. v. Goldman Sachs & Co.*, No. 15 Civ. 6579, 2017 WL 1048088, at *12 (S.D.N.Y. Mar. 17, 2017); *see Valenti v. Going Grain, Inc.*, 74 N.Y.S.3d 520, 522 (1st Dep't 2018). "Consequently, a plaintiff's breach of the implied covenant of good faith and fair dealing claim must allege facts that differ from the underlying breach of contract claim." *Presbyterian Healthcare Servs.*, 2017 WL 1048088, at *12.

Because the alleged facts underlying the contract claim for failure to indemnify and the good faith and fair dealing claims are substantially the same, the latter are dismissed. Moreover, the injury alleged for the breach of contract claim and the good and fair dealing claims are the same -- damages of $388,166 -- thereby foreclosing separate causes of action. *See Apogee Handcraft, Inc. v. Verragio, Ltd.*, 65 N.Y.S.3d 27, 29 (1st Dep't 2017) (dismissing claim for breach of the implied covenant of good faith and fair dealing as redundant because it was "intrinsically tied to the damages allegedly resulting from a breach of the contract").

### 8. Breach of the Obligation to Defend, Indemnify and Hold Harmless (Count 3), Common Law Indemnity (Count 4) and Unjust Enrichment (Count 5)

The claims for common law indemnity, breach of the obligation to defend, indemnify and

hold harmless and unjust enrichment are dismissed because they are duplicative of the breach of contract claim for failure to indemnify.  *See Chesapeake Energy Corp. v. Bank of New York Mellon Tr. Co., N.A.*, 837 F.3d 146, 149–50 (2d Cir. 2016) (quoting *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 964 (2d Cir. 1998) (Under "well–settled principles of New York law . . .  the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract . . . for events arising out of the same subject matter.")); *Maspeth Fed. Sav. & Loan Ass'n v. Fid. Info. Servs.*, LLC, 275 F. Supp. 3d 411, 418 (E.D.N.Y. 2017) ("Under New York law, where there is a breach of contract claim and a valid, enforceable contract is found, a court will not recognize separate causes of action for . . . common law indemnity."); *see also Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED in part and DENIED in part.  In general, the motion to dismiss is granted except for claims based on Defendant's failure to indemnify under the LOI as to claims and demands by both IFS and WBT, notwithstanding that IFS is not referenced in the LOI.  Specifically, the following claims are dismissed: breach of implied warranty, breach of the obligation to defend, indemnify and hold harmless, common law

indemnity, unjust enrichment and breach of the implied duty of good faith and fair dealing (Counts 2, 3, 4, 5 and 6). The following claims and theories of liability survive: breach of contract (failure to indemnify theory only), negligent misrepresentation (IFS theory only), fraud in the inducement (IFS theory only) and reformation (to include IFS) (Counts 1, 7, 8 and 9).

Dated: June 14, 2019
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**