**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STRALIA MARITIME S.A. and AERIO
SHIPMANAGEMENT LTD.,

                       Plaintiffs,

   -against-

PRAXIS ENERGY AGENTS DMCC,

                  Defendant.

**4:18-cv-04150 (LGS)**

## <u>PLAINTIFFS' PRE-TRIAL BRIEF</u>

Michael E. Unger
Michael J. Dehart
Freehill Hogan & Mahar LLP
80 Pine Street, 25th Floor
New York, NY 10005
(212) 425-1900 / (212) 425-1901 (Fax)
*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... iii

I.   INTRODUCTION ........................................................................................... 1

II.  THE FACTS ................................................................................................... 1

III. PROCEDURAL BACKGROUND.................................................................. 5

IV. LEGAL ARGUMENT..................................................................................... 6

      A.  Praxis Breached the LOI ....................................................................... 6

      B.  Plaintiffs are Entitled to Recover Damages for Praxis' Breaches of the LOI ............... 9

      C.  Plaintiffs Should be Awarded Attorney's Fees Incurred in this Action ...................... 13

CONCLUSION............................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                            **Pages**

*Alyeska Pipeline Service, Co. v. Wilderness Society,*
421 U.S. 240 (1975) ................................................................................................ 14, 15

*Balance Point Divorce Funding, LLC v. Scrantom,*
305 F.R.D. 67 (S.D.N.Y. 2015) ................................................................................ 13

*Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.,*
10 N.Y.3d 187 (N.Y. 2008) ...................................................................................... 10

*Castillo Grand, LLC v. Sheraton Operating Corp.,*
719 F.3d 120 (2d Cir. 2013) ................................................................................ 13, 14

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991) .................................................................................................... 14

*Coastal Power Int'l v. Transcon. Capital Corp.,*
10 F. Supp. 2d 345 (S.D.N.Y. 1998) ........................................................................ 10

*Delta S.S. Lines, Inc. v. Avondale Shipyards, Inc.,*
747 F.2d 995 (5th Cir. 1984) ................................................................................... 12

*Gibbs-Alfano v. Burton,*
281 F.3d 12 (2d Cir. 2002) ......................................................................................... 9

*Great Lakes Bus. Tr. v. M/T Orange Sun,*
855 F. Supp. 2d 131 (S.D.N.Y. 2012) ...................................................................... 11

*Hudson & Broad, Inc. v. J.C. Penney Corp.,*
553 F. App'x 37 (2d Cir. 2014) .................................................................................. 6

*Johnson v. Nextel Commc'ns, Inc.,*
660 F.3d 131 (2d Cir. 2011) ....................................................................................... 6

*Karmel v. City of N.Y.,*
2008 U.S. Dist. LEXIS 3804 (S.D.N.Y. Jan. 9, 2008) ............................................ 13

*Kenford Co. v. County of Erie,*
73 N.Y.2d 312 (1989) ............................................................................................... 11

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.,*
424 F.3d 195 (2d Cir. 2005) ....................................................................................... 8

*Lorena Int'l N. Am., Inc. v. Vican Trading,*
   2009 U.S. Dist. LEXIS 56708 (E.D.N.Y. July 2, 2009) ........................................ 10

*Marine Transp. Lines v. M/V Tako Invader*,
   37 F.3d 1138 (5th Cir. 1994) ........................................ 11

*Moore-McCormack Lines, Inc. v. The Esso Camden*,
   244 F.2d 198 (2d Cir. 1957) ........................................ 12

*Nature's Plus Nordic A/S v. Nat. Organics, Inc.,*
   980 F. Supp. 2d 400 (E.D.N.Y. 2013) ........................................ 6

*Palmer v. County of Nassau*,
   977 F.Supp.2d 161 (E.D.N.Y. 2013) ........................................ 14

*Scarsdale Cent. Serv. v. Cumberland Farms, Inc.,*
   2016 U.S. Dist. LEXIS 30290 (S.D.N.Y. Mar. 9, 2016) ........................................ 13

*Schonfeld v. Hilliard,*
   218 F.3d 164 (2d Cir. 2000) ........................................ 10, 11

*Shaw Group, Inc. v. Triplefine Int'l Corp.,*
   322 F.3d 115 (2d Cir. 2003) ........................................ 8

*Thomas & Agnes Carvel Found. v. Carvel*,
   736 F.Supp.2d 730 (S.D.N.Y. 2010) ........................................ 14

*Tractebel Energy Mktg. v. AEP Power Mktg.,*
   487 F.3d 89 (2d Cir. 2007) ........................................ 10

*Zorbas v. United States Tr. Co., N.A.,*
   48 F. Supp. 3d 464 (E.D.N.Y. 2014) ........................................ 6

**INTRODUCTION**

Plaintiffs Stralia Maritime S.A. ("Stralia") and Aerio Shipmanagement Ltd. ("Aerio" and, collectively with Stralia, "Plaintiffs") hereby submit their Pre-Trial Brief in advance of the bench trial in this matter scheduled to begin on October 29, 2019. Boiled down to its basics, this action derives from Defendant Praxis Energy Agents DMCC's ("Praxis") never-ending attempt to weasel its way out of an unfortunate situation entirely of Praxis' own creation which Praxis initially agreed to clean up but has now refused to do so despite its express agreement otherwise. This attempt should end with the Court entering judgment against Praxis awarding principal damages to Plaintiffs in the amount of $282,620.68, as well as interest at the contractual rate of 9% per annum. In addition, Praxis should also be required to pay Plaintiffs' attorneys' fees incurred in prosecuting this action in light of Praxis' conduct in failing to abide by the express terms of the contracts between the parties and having steadfastly adhered to a defense which it has dropped at the 11th hour for which no good faith basis ever existed in the first place.

**THE FACTS**

Stralia is the registered owner of the M/V GEMA (the "Vessel"), and was also the Owner of the Vessel in April 2017. Aerio was the commercial manager of the Vessel in April 2017 and maintains that role to date. Praxis is a bunker trader based in Dubai.

On April 7, 2017, Plaintiffs and Praxis entered into Bunker Nomination dated April 7, 2017, bearing Contract No. 20348, pursuant to which Praxis was required to supply bunkers (marine fuel) to the Vessel at the United Arab Emirates Port of Fujairah on or about April 10-12, 2017 (the "Bunker Contract"). A copy of the Bunker Contract has been submitted as **EX P1**. The Bunker Contract incorporated the Praxis Energy Agents General Terms and Conditions for

512470.1

the Sale of Marine Bunker Fuels and Lubricants (the "Praxis GTC"), a copy of which has been submitted as **EX P3**.

According to the Bunker Contract, an entity called "World Bunker Suppliers" ("WBT[1]") would physically supply the bunkers at Fujairah. Unbeknownst to Plaintiffs, Praxis had actually sub-contracted its obligation to supply the bunkers to the Vessel to non-party International Fuel Suppliers Ltd. ("IFS") pursuant to IFS Sales Confirmation bearing Sales Order Ref: IFS009617FUJ (the "IFS Sales Confirmation"), a copy of which has been submitted as **EX P4**. IFS apparently further sub-contracted with WBT, which ultimately actually supplied the bunkers to the Vessel on April 11, 2017, and issued two Bunker Delivery Receipts ("BDRs"), copies of which have been submitted as **EX P7**. Each of the BDRs identifies WBT's email address as "sales@worldbunkersuppliers.com."

Prior to payment becoming due from Plaintiffs to Praxis under the Bunker Contract, Plaintiffs were informed that Praxis was embroiled in a dispute with WBT and/or IFS arising out of other bunker supplies unrelated to the supply of bunkers to the Vessel. Praxis informed Plaintiffs that as a result of this dispute it would be withholding payment to its sub-contractor for the bunkers supplied to the Vessel, despite the fact that such act would subject the Vessel to potential arrest. Accordingly, in order to protect the Vessel from arrest and therefore mitigate their damages arising out of Praxis' breach of the implied obligation in the Bunker Contract that Praxis would have clear title to the bunkers sold to Plaintiffs, Plaintiffs initially withheld payment from Praxis.

Thereafter, on June 16, 2017, Plaintiffs and Praxis agreed to resolve the dispute by amending and supplementing the Bunker Contract with a Letter of Indemnity ("LOI"), a copy of

---

[1]  Whereas the Bunker Contract listed "World Bunker Suppliers" as the "BDR/Barge Operator" for the bunkers, the actual Bunker Delivery Receipt ("BDR") was issued by "World Bunker Traders."

512470.1

which has been submitted as **EX P12**. Several drafts of the LOI were exchanged during negotiations between the parties as to the wording of the LOI before the final version was entered and executed. At no time during negotiation of the LOI did Praxis indicate to Plaintiffs that IFS was also involved in the chain of supply, this despite the fact that IFS was Praxis' contractual counterparty on the bunker stem. Following execution of the LOI, Plaintiffs remitted payment to Praxis for the bunkers supplied pursuant to the Bunker Contract.

The LOI contains several notable provisions. First, the LOI required that "Praxis shall use best endeavors to resolve the aforesaid dispute between Praxis and World Bunkering within a reasonable period of time and will notify Stralia and Aerio in writing upon settlement of the dispute." *Id*. Second, the LOI further required Praxis to "fully defend, at its sole cost, indemnify and hold harmless the Vessel, Stralia and Aerio from any and all demands, claims, liabilities, damages, suits, actions (including arrest or attachment of the Vessel), debts, obligations, judgments, costs and expenses of whatsoever kind and nature (inclusive of reasonable attorneys fees) by WBT arising out of the Bunkers supplied to the Vessel on 11 April 2017." *Id*.

On September 19, 2018, Plaintiffs received a letter from the law firm of Stephenson Harwood LLP acting on behalf of IFS (the "Demand Letter").  A copy of the Demand Letter has been submitted as **EX P13**. The Demand Letter stated that Praxis had failed to pay the IFS Invoice issued by IFS to Praxis for the bunkers supplied to the Vessel and further noted that "neither IFS nor their lawyers have received any response/proposal for payment from Praxis in respect of the outstanding invoice following various written demands for payment." *Id*. In addition, the Demand Letter also provided that if IFS did not receive payment of the IFS Invoice by September 26, 2017, IFS would proceed "to arrest the Vessel without further notice at a time and place of its choosing, and pursue legal proceedings against Owners/Managers/Charterers and

Praxis before any competent court." *Id*. In other words, the Demand Letter made clear that if IFS did not receive full payment for the bunkers it would proceed to arrest the Vessel.

Because the Demand Letter clearly triggered Praxis' obligations under the LOI, it was immediately forwarded by Plaintiffs to Praxis via email on December 20, 2017. A copy of this email has been submitted as **EX P14**. Plaintiffs' email specified that "[Plaintiffs] expect you to take immediate action and deal directly with Stephenson Harwood to ensure no action is taken against the vessel or the Owners." *Id*. Five days later, on September 25, 2017, Praxis responded by stating: "Your below message duly noted. We stand by our letter of indemnity to your side, which bears no expiration date. We will keep you posted for any further developments." A copy of this email has been submitted as **EX P15**.

However, despite its insistence that it would "stand by" the LOI, Praxis failed to take any action whatsoever in response to the Demand Letter. Praxis did not pay the IFS Invoice or even contact IFS, let alone attempt to negotiate a resolution. Plaintiffs, who relied on the text of the LOI and Praxis' representation that it would fully comply with same, were unaware that Praxis chose to completely ignore the Demand Letter.

Unsurprisingly, on November 8, 2017, ***almost 5 months after Plaintiffs remitted full payment to Praxis for the bunkers and over a month after Praxis was served with the Demand Letter***, IFS arrested the Vessel at Fujairah and also commenced substantive court proceedings in Dubai against both Plaintiffs and Praxis for non-payment of its invoice submitted to Praxis. Despite the fact that the LOI explicitly and unambiguously required Praxis to defend, indemnify, and hold harmless Plaintiffs and the Vessel from the very proceedings commenced in Dubai, Praxis flatly refused to comply with this obligation. As a result of Praxis' breach of its obligations under the LOI, Plaintiffs were left with no choice but to post cash security to free the

Vessel from arrest.  In doing so and subsequently defending the court proceedings, Plaintiffs incurred considerable legal fees and costs in the total amount of $57,520.00. **EX P23**. Some nearly 10 weeks after Plaintiffs posted security to obtain the Vessel's release, Praxis finally paid the principal amount of the IFS invoice to IFS ($84,380.37); however, Praxis failed and refused to pay interest and court costs and fees as demanded by IFS (and to which IFS was entitled under its contract with Praxis and under UAE law). Ultimately, Plaintiffs were forced to pay IFS the additional amount of $18,720.00 in order to fully resolve the UAE legal proceedings. **EX P22**.

In addition to the foregoing, the arrest by IFS also resulted in the Plaintiffs incurring considerable further damages in the form of additional expenses and lost profits due to the delay of the Vessel. In total, Plaintiffs' principal damages arising out of Praxis DMCC's breaches of the Supply Contract and LOI total $282,620.68.

## PROCEDURAL BACKGROUND

Because Praxis agreed in both the Bunker Contract and LOI to resolve all disputes arising thereunder in the Southern District of New York, Plaintiffs filed the instant action to recover for the damages resulting from Praxis' conduct. (Dkt. 1.) Instead of answering the Complaint and appearing in the very jurisdiction it agreed to litigate in, Praxis filed a motion to dismiss on August 28, 2018, in which it sought to wholly escape its obligations under the LOI. (Dkt. 21.) Surprisingly, Praxis' motion sought to dismiss Plaintiffs' claim for breach of the LOI because, according to Praxis, the LOI was unenforceable based on lack consideration. (Dkt. 12 at 3-4). Plaintiffs opposed the motion to dismiss, which was ultimately denied by the Court on March 12, 2019. (Dkt. 58).

Undeterred by the denial of its motion to dismiss, on April 22, 2019, Praxis subsequently filed a motion for judgment on the pleadings which essentially sought to repackage the

arguments raised in its earlier motion. (Dkt. 66.) In particular, in its motion for judgment on the pleadings Praxis again sought to avoid its obligations under the LOI by arguing that the LOI was unenforceable for lack of consideration. The motion for judgment on the pleadings was denied in part and granted in part by the Court on April 29, 2019 (Dkt. 71), with a full Opinion & Order following on June 14, 2019 (Dkt. 76) (the "Opinion"). Notably, the Court denied Praxis' motion for judgment on the pleadings as to the count of Plaintiffs' Amended Complaint for breach of the LOI. (*See id*. at p. 9-10). This action is now ripe for trial.

## LEGAL ARGUMENT

As it must, Praxis has now finally admitted that it breached the LOI. Indeed, as will be explained at length below, Praxis clearly breached the LOI in at least three separate ways.  On each occasion, Plaintiffs suffered concrete damages that directly flowed from the specific breach. Judgment should be entered in favor of Plaintiffs requiring Praxis to remit payment for all damages that have been incurred.

### A.   **Praxis Breached the LOI**

The LOI is a contract that is governed by New York law. Under New York law, the elements of a claim for breach of contract are "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011); *see also Hudson & Broad, Inc. v. J.C. Penney Corp.*, 553 F. App'x 37, 41 (2d Cir. 2014); *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 980 F. Supp. 2d 400, 409 (E.D.N.Y. 2013); *Zorbas v. United States Tr. Co., N.A.*, 48 F. Supp. 3d 464, 474 (E.D.N.Y. 2014). All of these elements are easily satisfied here.

**First**, the LOI is indisputably a valid amendment of the contract that was entered between the parties. Although Praxis previously argued that the LOI was unenforceable due to an

512470.1

alleged lack of consideration, this argument was rejected by the Court in its Opinion & Order granting in part and denying in part Praxis' motion to dismiss. (Dkt. 76 at p. 9-10.) Thus, there is no dispute that the LOI constitutes a valid amendment to the contract between the parties.

**Second**, Plaintiffs performed all of their obligations under the LOI. The LOI required Plaintiffs to remit full payment of the Praxis Invoice to Praxis, which Plaintiffs did on July 6, 2018. Moreover, the LOI also required Plaintiffs to "notify Praxis in writing immediately upon any such demand, claim, suit, action and/or arrest become known to any of them." **EX P12**, the LOI. Plaintiffs clearly satisfied this obligation as well. Praxis was immediately notified of the demand/claim advanced by IFS through the Demand Letter. **EX P14**, email from Plaintiffs forwarding Demand Letter to Praxis. Likewise, Praxis was also immediately notified of the arrest of the Vessel by IFS. **EX P24**, email from Plaintiffs to Praxis regarding arrest of the Vessel. It is clear that Plaintiffs performed all obligations under the LOI.

**Third**, Praxis failed on several occasions to perform its obligations under the LOI. As set forth above, the LOI required Praxis to "fully defend, at its sole cost, indemnify and hold harmless the Vessel, Stralia and Aerio from any and all demands, claims, liabilities, damages, suits, actions (including arrest or attachment of the Vessel), debts, obligations, judgments, costs and expenses of whatsoever kind and nature (inclusive of reasonable attorneys fees) by WBT arising out of the Bunkers supplied to the Vessel on 11 April 2017." **EX P12**, the LOI. This provision was breached by Praxis on two separate occasions. First, Praxis breached this obligation when it failed to respond to the Demand Letter served by IFS. The Demand Letter clearly constituted a "demand" or "claim" under the LOI, thereby triggering Praxis' obligation to "fully defend…indemnify and hold harmless the Vessel, Stralia and Aerio." *Id*. Instead of complying with this obligation, Praxis did nothing, thereby breaching the LOI.

7

Second, Praxis also breached this obligation when it failed to "fully defend…indemnify and hold harmless the Vessel, Stralia and Aerio" from the arrest of the Vessel by IFS. *Id*. Plaintiffs immediately informed Praxis as soon as the Vessel was arrested and implored Praxis to abide by the terms of the LOI. However, Praxis wantonly disregarded its obligation under the LOI and forced Plaintiffs to foot the bill in defending the arrest. Once again, this failure to act represents an explicit breach of the LOI by Praxis.

Moreover, prior to breaching the indemnity term of the LOI, Praxis breached the provision requiring Praxis to "use best efforts to endeavor to resolve the aforesaid dispute between Praxis and World Bunkering within a reasonable period of time." *Id*. It is axiomatic that "[i]n interpreting a contract under New York law, 'words and phrases . . . should be given their plain meaning.'" *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (quoting *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003)). At the very least, the plain and natural reading of this term imposed an obligation upon Praxis to try to resolve its dispute with WBT/IFS. Praxis, however, did absolutely nothing in that regard. Because Praxis undertook **_no_** efforts to resolve its dispute with IFS/WBT, it thus follows that Praxis did not comply with the obligation to use best efforts to resolve the dispute.

**Fourth**, Plaintiffs have suffered considerable damages in the current total amount of $282,620.68 as a result of Praxis' serial breaches of the LOI. Specifically, Plaintiffs have suffered damages in the following amounts:

1. $18,720.00 – funds paid by Plaintiffs to IFS in full and final settlement of all claims alleged against Stralia and the Vessel by IFS in the UAE Legal Proceedings;

2. $57,520.00 – attorneys' fees and costs incurred by Plaintiffs in defending the UAE Legal Proceedings commenced by IFS;

3. $23,191.68 – extra expenses incurred by Plaintiffs for the time the Vessel was under arrest at Fujairah from November 8 to 14, 2017. This figure includes the cost of bunkers consumed during the period, agent's expenses, crew expenses, and the cost of technicians who were unable to board the Vessel.

4. $183,189.00 – loss of profits on a previously-fixed voyage charter party that the Vessel was unable to timely perform as a result of the arrest.

5. $50,174.85 – pre-judgment interest at the rate of 9% set forth in N.Y. CPLR § 5004, calculated from the date of the arrest (November 8, 2017) to the estimated date of conclusion of trial (October 29, 2019).

As will be explained below, all of the aforementioned damages suffered by Plaintiffs are recoverable under the applicable law.

### B.     Plaintiffs are Entitled to Recover Damages for Praxis' Breaches of the LOI

All of the damages alleged by Plaintiffs in this action are recoverable either under the explicit text of the LOI, or as consequential damages arising out of Praxis' breaches of the LOI, or both. First, Plaintiffs' claims for settlement funds paid to IFS and the attorneys' fees and costs incurred in defending the UAE Legal Proceedings are clearly recoverable under the explicit text of the LOI. Under New York law, "an indemnity contract is interpreted to effectuate the intention of the parties as expressed in the unequivocal language of the contract." *Gibbs-Alfano v. Burton*, 281 F.3d 12, 19 (2d Cir. 2002). As set forth above, the indemnity provision of the LOI required Praxis to "fully defend, at its sole cost, indemnify and hold harmless the Vessel, Stralia and Aerio from any and all demands, claims, liabilities, damages, suits, actions (including arrest or attachment of the Vessel), debts, obligations, judgments, costs and expenses of whatsoever kind and nature (inclusive of reasonable attorneys fees) by WBT arising out of the Bunkers supplied to the Vessel on 11 April 2017." The arrest of the Vessel and accompanying UAE Proceedings unmistakably constituted "actions…by WBT arising out of the Bunkers supplied to the Vessel on 11 April 2017" for which Praxis was required to "fully defend, at its sole cost,

9

indemnify and hold harmless" Plaintiffs.  Praxis did not, and Plaintiffs suffered direct damages in the form of settlement funds and attorneys' fees. These damages represent the "natural and probable consequences" of Praxis' breach of the LOI and are thus recoverable under established New York law. *See Coastal Power Int'l v. Transcon. Capital Corp.*, 10 F. Supp. 2d 345, 364 (S.D.N.Y. 1998) (explaining that under New York law, the non-breaching party may recover damages "which are the natural and probable consequence of the breach"); *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 192 (N.Y. 2008) (noting that "[i]t is well settled that in breach of contract actions the non-breaching party may recover general damages which are the natural and probable consequence of the breach") (internal quotation marks omitted).

Next, Plaintiffs' claims for extra expenses and lost profits are clearly recoverable as consequential damages arising out of Praxis' breaches of the LOI. It is well-settled that consequential damages for breach of contract are recoverable under New York law as long as the non-breaching party proves "(1) the damages were foreseeable; (2) that the damages were within the contemplation of both parties when the contract was made; and (3) that the amount of damages can be determined with reasonable certainty." *Lorena Int'l N. Am., Inc. v. Vican Trading*, No. 08-CV-2686 (CPS)(SMG), 2009 U.S. Dist. LEXIS 56708, at *7 (E.D.N.Y. July 2, 2009); *see also Tractebel Energy Mktg. v. AEP Power Mktg.*, 487 F.3d 89, 111 (2d Cir. 2007). When determining whether consequential damages are recoverable, courts applying New York law take a "common sense approach, and determine what the parties intended by considering the nature, purpose and particular circumstances of the contract known by the parties . . . as well as what liability the defendant fairly may be supposed to have assumed consciously." *Schonfeld v.*

10

*Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000); *see also Kenford Co. v. County of Erie*, 73 N.Y.2d 312, 319 (1989).

First, Plaintiffs' damages for extra expenses and lost profits were clearly foreseeable and within the contemplation of the parties when the LOI was entered into because such damages are common and well-known within the international shipping business. In short, all entities involved in the international shipping community know that a vessel will lose profits and incur expenses if it is arrested and forced to sit idle for any period of time. Praxis, as an experienced international bunker trader intimately involved in the international shipping industry, surely knew that an arrest of the Vessel would result in Plaintiffs suffering such damages. Indeed, it is telling that Praxis' own General Terms seek to limit Praxis' liability for "loss of hire, income and/or profit" in the event of any breach by Praxis. *See* **EX P3** at Cl. 16.03. Thus, it is clear that Plaintiffs' damages for extra expenses and lost profits were foreseeable to and contemplated by both Praxis and Plaintiffs at the time of entry of the LOI.

Next, Plaintiffs' damages for lost profits and extra expenses are also recoverable because they have been established with reasonable certainty. In determining whether a plaintiff has satisfied its burden of proving damages with reasonable certainty, "mathematical precision is not required and reasonable approximations will suffice." *Great Lakes Bus. Tr. v. M/T Orange Sun*, 855 F. Supp. 2d 131, 149 (S.D.N.Y. 2012); *see also Marine Transp. Lines v. M/V Tako Invader*, 37 F.3d 1138, 1140 (5th Cir. 1994) (noting that neither absolute certainty nor mathematical precision are required to satisfy the reasonable certainty standard). "What constitutes 'reasonable certainty' is a fact-specific inquiry, assessed on a case-by-case basis." *M/T Orange Sun*, 855 F. Supp. 2d at 151.

With respect to claims for lost profits arising out of the loss of use of a vessel, "it is not necessary that [the vessel owner or operator] prove that they lost or turned down a specific contract or contracts." *Id*. at 150. Rather, a vessel owner or operator must simply prove that the vessel was "engaged in an active market" at the time of the event giving rise to the claim for lost profits. *Id*.; *see also Moore-McCormack Lines, Inc. v. The Esso Camden*, 244 F.2d 198, 201 (2d Cir. 1957) (awarding damages for lost profits upon showing that vessel was "active in a ready market"); *Delta S.S. Lines, Inc. v. Avondale Shipyards, Inc.*, 747 F.2d 995, 1001 (5th Cir. 1984) (noting that the test usually involves a showing that the vessel "has been engaged, or was capable of being engaged in a profitable commerce").

Here, Plaintiffs' claim for lost profits easily satisfies the reasonable certainty standard and is thus recoverable as a matter of law. At the time of the arrest the Vessel had been chartered to Vitol Bahrain for a voyage from Fujairah to Mukalla, Yemen for a flat rate of $350,000. **EX P17** at p. AERIO 206. Had the Vessel not been arrested, she would have tendered Notice of Readiness on November 11, 2017, at 13:24 and completed the voyage to Mukalla, Yemen on November 16, 2017, at approximately 11:28. **EX P19**. However, as a result of the arrest the Vessel was unable to tender Notice of Readiness until November 14, 2017, at 18:00. *Id*. This delay resulted in a loss of 6.19 days. Based upon Plaintiffs' calculations, the Vessel would have earned an average of $29,586 per day after payment of all voyage expenses on the voyage from Fujairah to Mukalla. Applying this average to the 6.19 days of lost time, Plaintiffs' lost profits equal $183,189.00 (6.19 x $29,586). This calculation easily satisfies the reasonable certainty standard necessary for recovery.

Likewise, the portion of Plaintiffs' claim for extra expenses incurred while the Vessel was under arrest has also been proven with reasonable certainty. Plaintiffs have provided

documents supporting the expenses incurred during this time period, and the testimony of Plaintiffs' witnesses at trial will establish that such expenses would not have been incurred but for the arrest of the Vessel. *See* **EXs P27 – 35**. As such, those damages are clearly recoverable as well.

### C.   Plaintiffs Should be Awarded Attorneys' Fees Incurred in this Action

Generally speaking, the costs recoverable by a prevailing party in this District are set forth in 28 U.S.C. § 1920 and S.D.N.Y. Local Rule 54.1. *See Balance Point Divorce Funding, LLC v. Scrantom*, 305 F.R.D. 67, 70 (S.D.N.Y. 2015). Local Rule 54.1(c) sets forth the items that are taxable as costs. These items include, *inter alia*, "attorney fees and disbursements and other related fees and paralegal expenses." Thus, per this Court's rules, attorney fees and disbursements are considered "costs" that can be taxed against a party, although these costs may be taxed in favor of the prevailing party only upon the order of the Court. *See* Local Rule 54.1(c)(7). Here, Plaintiffs submit that an award of attorneys' fees and related expenses in Plaintiffs' favor is warranted under the unique circumstances of this case.

Typically, "the 'American Rule' requires that each party to a lawsuit bear its own litigation costs and that 'the prevailing party may not recover attorneys' fees as costs or otherwise.'" *Scarsdale Cent. Serv. v. Cumberland Farms, Inc.*, No. 13-CV-08730 (NSR), 2016 U.S. Dist. LEXIS 30290, at *6 (S.D.N.Y. Mar. 9, 2016); *see also Castillo Grand, LLC v. Sheraton Operating Corp.*, 719 F.3d 120, 123 (2d Cir. 2013); *Karmel v. City of N.Y.*, No. 00-CV-9063 (KMK), 2008 U.S. Dist. LEXIS 3804, at *2 (S.D.N.Y. Jan. 9, 2008). However, there are a number of well-established common law exceptions to the American Rule which, if established, permit recovery of attorneys' fees in favor of the prevailing party. *Castillo Grand*, 719 F.3d at 124. In particular, the Supreme Court has recognized that an award of attorneys' fees as costs is

512470.1

appropriate in situations where the non-prevailing party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service, Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975); *see also Castillo Grand*, 719 F.3d at 124.[2]  In this regard, courts routinely award attorneys' fees under the common law exception recognized by the Supreme Court in *Alyeska Pipeline* in cases in which a defendant advances bad faith arguments in an effort to avoid the consequences of a clear contractual claim. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-51 (1991) (recognizing the inherent power of the court to sanction for bad-faith, "vexatious" or "wanton" conduct in affirming award of attorney's fees in an action for specific performance of a contract where defendant and his attorney made efforts to place properties at issue beyond the reach of the court); *Palmer v. County of Nassau*, 977 F.Supp.2d 161, 167 (E.D.N.Y. 2013) (awarding attorneys' fees in action where defendant acted in bad faith in seeking to escape settlement agreement); *Thomas & Agnes Carvel Found. v. Carvel*, 736 F.Supp.2d 730, 766-70 (S.D.N.Y. 2010) (awarding attorneys' fees to plaintiffs where defendant pursued meritless claims for an improper purpose in an action to enforce a will).

During the majority of the time this action has been pending, as well as prior to its inception, Praxis took the specious position that it did not owe any obligations under the LOI arising from the arrest of the Vessel because the arrest and preceding claims were advanced by IFS, whereas the LOI only specifically mentions WBT. Praxis, however, knew all along that IFS and WBT were in essence the same company (or at least closely related companies within the same "group" of companies) in light of the fact that Praxis' had contracted with IFS for a supply that Praxis knew would ultimately be performed by WBT.

---

[2] To be clear, Plaintiffs seek an award of attorneys' fees solely against Praxis, not Praxis' counsel.

Praxis' reliance on this slick, hyper-technical argument forced Plaintiffs to needlessly incur thousands of dollars in attorneys' fees for unnecessary discovery and defending against two motions which had no good faith basis. The fact that Praxis has abruptly dropped this argument in advance of trial speaks volumes as to its lack of merit and the bad faith behind it having been raised in the first place.

Moreover, while Praxis continues to dispute the scope of the LOI, there are numerous components of Plaintiffs' total claim (such as the attorneys' fees incurred in the UAE Action and settlement funds paid to IFS) to which Praxis now admits it must pay, yet it has not done so.

The foregoing is exactly the type of conduct that warrants an award of attorneys' fees under the common law exception to the American Rule identified in *Aleyeska Pipeline*. Accordingly, Plaintiffs respectfully the Court issue an award of attorneys' fees against Praxis in an amount to be determined following conclusion of the upcoming trial.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue judgment in their favor in the amount of $282,620.68, plus pre-judgment interest at the contractually mandated rate of 9%. In addition, Plaintiffs also request the Court issue an award of attorneys' fees in Plaintiffs' favor in an amount to be determined following the close of trial.


Respectfully Submitted,
FREEHILL, HOGAN & MAHAR, LLP


/s/ Michael E. Unger


Michael E. Unger
Michael J. Dehart

512470.1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that, on October 18, 2019, a true and correct copy of the captioned document was served upon all counsel of record via ECF.


/s/ Michael E. Unger

Michael E. Unger

512470.1